STATE OF CONNECTICUT *v.* JERRY THOMPSON
(AC 15070)

Foti, Schaller and Daly, Js.

Argued June 6—officially released September 23, 1997

*Richard M. Marano*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *George Ferko*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), conspiracy to possess narcotics in violation of General Statutes §§ 53a-48 and 21a-279 (a) and interfering with a police officer in violation of General Statutes § 53a-167a (a). On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress evidence and (2) denied his motion for a judgment of acquittal based on a claim of insufficiency of the evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 13, 1994, at approximately 10 p.m., two Hartford police officers, Anthony Martinez and Patricia Beaudin, in response to reports that drugs were being sold in South Green Park in Hartford, set up a surveillance in an alleyway across from the park. In Martinez and Beaudin's direct line of sight was a park bench approximately fifty feet away on which the defendant and Luis Ayala were sitting. Soon thereafter, Martinez and Beaudin witnessed an individual, known to them as being drug-dependent, approach the bench where the defendant was sitting. They witnessed the individual have a brief conversation with the defendant and then

hand the defendant a piece of paper, which appeared to be money. They then witnessed the defendant put the piece of paper into his pocket, walk over to a planter approximately fifteen feet away and bend down and retrieve an item from the planter. While the defendant was at the planter, they witnessed Ayala get up from the bench, look around in all directions and then wave to the defendant to return to the bench. The defendant returned to the bench area and handed the individual the item that he had retrieved from the planter. The individual walked away and the defendant and Ayala returned to their original positions on the park bench. Within the next fifteen to twenty minutes, Martinez and Beaudin witnessed two more exchanges that, on the basis of their training and experience, they believed to be drug transactions.

Subsequently, Martinez and Beaudin got into their unmarked police car, drove around the block and entered the park, stopping just short of the bench where the defendant and Ayala were sitting. They ordered four other individuals in the park to stop and place their hands on the car. As the defendant and Ayala got up from the bench and started to walk away, the officers stopped them and told them to put their hands on the car. The officers then handcuffed the six individuals together for safety, called for assistance and then patted them down for weapons. During the patdown, Martinez discovered a "wad" of United States currency in the defendant's pocket. Martinez took the currency out of the defendant's pocket to investigate it, placed it on top of the cruiser and put the defendant's hands on top of it. When the assisting police officers arrived, they placed the defendant and Ayala in the backseat of the cruiser. At that point, Beaudin began to take each individual's identification, and Martinez proceeded to the planter from which he and Beaudin had witnessed the defendant retrieve what they believed to be drugs. In

the planter, Martinez located a plastic bag containing a rock-like substance that was later confirmed to be crack cocaine. The crack cocaine and the currency were seized as evidence and the defendant and Ayala were placed under arrest.

Prior to the trial, the defendant filed a motion to suppress the crack cocaine and the currency claiming that he had been arrested without probable cause and that the evidence seized by the police constituted the fruits of an illegal search and seizure. At the suppression hearing, the state introduced the testimony of Martinez and Beaudin, who testified to the facts set forth previously. In making its ruling on the motion to suppress, the trial court stated: "[B]oth detectives who testified in this matter are experienced officers and have made a great many arrests in drug offenses, which would seem reasonable that that would at least give them some familiarity with the scenario—with a variety of scenarios to be sure, but the type of scenario that was displayed in the testimony. And it would seem reasonable to the court to be known to them from their prior experience. While I think one of the witnesses—or perhaps both—indicated that he or she didn't know at the time of the incident, in August, 1994, that the customers, or the alleged customers, were drug addicts. At the time, it's clear that they were people who were known to them and who were buyers and around the area of other drug hot spots as Officer Beaudin called it. The officers appeared to have an unobstructed view of both the defendant, Mr. Ayala, and the three alleged customers—drug customers—during this process and witnessed the defendant and testified they witnessed the defendant and Mr. Ayala be approached by the first person; that something was put into his hand; that he then got up and went over to the planter and took something out. Admittedly, they couldn't tell exactly what it was in terms of seeing it to the point where

they would know what it was. But it—but they saw that scenario develop. And with that person carrying something back to the person who approached them at the bench site; saying a few words, and then engaging in what appeared to be a transfer of something from the defendant to the alleged customer. It doesn't seem unreasonable, at all, to this court, that experienced police officers would conclude that this was—reasonably conclude that this was a drug transaction. This scenario, that I've just briefly described, took place very quickly, apparently in a matter of seconds. And is strengthened by the fact that it was repeated three times while they were there conducting their surveillance. For all these reasons, the court finds probable cause for the arrest of this defendant. Therefore the motion is denied."

I

The defendant claims first that the trial court improperly refused to grant his motion to suppress. In particular, he claims that the motion to suppress should have been granted because he was arrested without probable cause and because the crack cocaine and currency were seized in violation of his constitutional rights. The defendant failed, however, to seek an articulation of the trial court's refusal to grant his motion to suppress. See Practice Book § 4051.[1] In the absence of an articulation, we cannot address the issues the defendant raises

---

[1] Practice Book § 4051 provides in relevant part: "A motion seeking . . . an articulation . . . of the decision of the trial court shall be called . . . a motion for articulation . . . . Any motion filed pursuant to this section shall state with particularity the relief sought. . . . The trial court may make such corrections or additions as are necessary for the proper presentation of the issues raised or for the proper presentation of questions reserved. The trial judge shall file the decision on the motion with the appellate clerk. . . . The sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on the motion filed pursuant to this section . . . shall be by motion for review under Sec. 4054. . . ."

on appeal because we do not have any findings or conclusions of law by the trial court on a number of important factors. Specifically, we do not have before us a finding by the trial court of when the valid arrest of the defendant occurred, at the point when he was initially detained or after the crack cocaine was found. We also do not have a finding of whether the defendant had a reasonable expectation of privacy in the planter in which the crack cocaine was found. Finally, we do not have a finding of whether the seizure of the currency occurred before or after the valid arrest. Because the record is inadequate, we decline to review this claim. See Practice Book § 4061;[2] *Holmes* v. *Holmes*, 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993).

## II

The defendant claims next that the trial court improperly denied the defendant's motion for a judgment of acquittal because the evidence adduced at trial was insufficient to sustain a verdict of guilty. Specifically, the defendant claims that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that the defendant was in constructive possession of the crack cocaine found in the planter. We are not persuaded.

"We employ a two part analysis in reviewing the sufficiency of the evidence to sustain a criminal conviction. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative

---

[2] Practice Book § 4061 provides in relevant part: "It is the responsibility of the appellant to provide an adequate record for review as provided in Sec. 4007."

force of the evidence established guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Roy*, 38 Conn. App. 481, 488, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996); *State* v. *Coleman*, 35 Conn. App. 279, 293–94, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Alford*, 37 Conn. App. 180, 184, 655 A.2d 782, cert. denied, 234 Conn. 914, 660 A.2d 357 (1995).

"In order to prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence and exercised dominion and control over it. . . . Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless

there are other incriminating statements or circumstances tending to buttress such an inference." (Citations omitted; internal quotation marks omitted.) *State* v. *Frazier*, 39 Conn. App. 369, 378–79, 665 A.2d 142 (1995).

Here, the jury was offered evidence that the defendant knew of the presence of the cocaine and exercised control over it. Three known drug-dependent individuals approached the defendant in an area known for drug sales. Each individual briefly conversed with the defendant and then handed him a piece of paper that appeared to be currency. The defendant placed the piece of paper into his pocket, walked over to the planter and bent down and retrieved an object from the planter. The defendant then waited for Ayala to signal him, at which time he walked over to the individual and handed the individual the item that he had retrieved from the planter. When the police searched the planter, they found a plastic bag containing crack cocaine. By repeatedly receiving money from drug-dependent persons in a park noted for drug transactions, retrieving items from the planter, waiting for signals and then returning and handing items to these persons, the defendant explicitly demonstrated awareness of the presence of the cocaine and also exercised dominion and control over both the planter and the cocaine hidden therein. See *State* v. *Thompson*, 20 Conn. App. 290, 291–93, 567 A.2d 837 (1989); *State* v. *Melillo*, 17 Conn. App. 114, 117–18, 550 A.2d 319 (1988). On the basis of this evidence, we conclude that the jury reasonably could have found that the defendant was in constructive possession of the narcotics seized from the planter.

The judgment is affirmed.

In this opinion the other judges concurred.