STATE OF CONNECTICUT *v.* CALVIN BRADLEY
(AC 19551)

Foti, Zarella and Pellegrino, Js.

Argued June 2—officially released October 31, 2000

*Erik Bartlett,* certified legal intern, with whom were *Richard Lord,* certified legal intern, and, on the brief, *Pamela S. Nagy,* assistant public defender, for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Eugene Calistro,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant, Calvin Bradley, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics with intent to sell within 1500 feet of an elementary school in violation of General Statutes § 21a-278a (b), interfering with an officer in violation of General Statutes § 53a-167a and criminal impersonation in violation of General Statutes (Rev. to 1997) § 53a-130, as amended by Public Acts 1997, No. 97-123, § 3. The defendant was sentenced to a total effective term of twenty years, suspended after ten years, followed by five years of probation.[1]

On appeal, the defendant claims that the evidence was insufficient to sustain his conviction for criminal impersonation and for possession of narcotics and possession with intent to sell. The defendant also claims that the court improperly (1) allowed the jury to find that he had failed to prove drug dependency, (2) allowed him to be convicted and sentenced under both § 21a-277 (a) and § 21a-278 (b) in violation of his double jeopardy rights, (3) allowed expert testimony and (4) instructed the jury. We reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On March 26, 1998, at approximately 10 p.m., members of the New Haven police department narcotics unit were about to execute a search and seizure

---

[1] The court imposed the following sentences: Count one, seventeen years, suspended after seven years, five of which are mandatory; count two, fifteen years, suspended after five years, concurrent with the sentence imposed for count one; count three, three years mandatory and consecutive to the sentences imposed in counts one and two; count four, one year concurrent with the sentences imposed for counts one and two; and count five, six months concurrent with the sentences imposed for counts one and two.

warrant on the first floor at 191 Pine Street in New Haven. Prior to this action and as part of the investigation, Officer Albert Ferraro, who was undercover, attempted to purchase narcotics from the first floor kitchen window at this address. He knocked on the center window that was covered with plywood bearing a hole cut in the lower left portion. The defendant responded, asking, "How many?" Ferraro said, "One," and began to hand the defendant $10 through the window. As the defendant reached for the money, he stopped abruptly. As the two men looked at each other, the defendant said, "You are a cop, go over to Fillmore Street."

Ferraro then returned to the police van and, accompanied by other officers, proceeded to execute the search and seizure warrant. Entry was gained through the exterior door of 191 Pine Street, using a two man battering ram, which was brought because the police had received information that the door to the apartment probably would be barricaded or fortified.

Before entry was actually gained, the defendant was heard to say, "Okay, okay, wait a minute, I will open the door." The police stopped ramming the door for ten to fifteen seconds, but when it did not open they resumed their efforts. The defendant then opened the door and, despite police orders to get to the ground, he refused and struggled, resisting the officers' efforts to secure him. The defendant was alone in the apartment when the search warrant was executed, and no one had left or entered up to the time of entry.

The defendant stated that he had been at the apartment since sundown, a few hours earlier. After securing the defendant, the police raid team cleared the apartment room by room to ensure that no other persons were present. The apartment had four rooms, and had no furnishings except for an empty dresser, a mattress

and a few other pieces of furniture; it appeared that no one resided there. The only viable exit from the apartment was the front door. The rear door was sealed with plywood and bolts, and the windows were covered with either plywood or steel brackets and wood and metal poles. A search of the defendant's person revealed $348 as well as a set of keys, one of which unlocked the dead bolt on the barricaded front door.

During the search, the police found five red tinted packets of freebase cocaine in plain view in the kitchen atop a portable stereo just across from the window where Ferraro had attempted the buy. Twenty similar packets of freebase cocaine were found on the toilet tank lid in the bathroom, and eighty-one similar packets of cocaine were found concealed under a dresser in the front room. The eighty-one packets were packaged in a large plastic bag containing three smaller bags, which held twenty-seven packets each. Alongside the drugs under the dresser was found money amounting to $435 and a Bridgeport welfare identification card bearing the photograph of the defendant and the name Kaseem Matts. The evidence was photographed before it was moved. Police also seized an operational walkie-talkie from the front room of the apartment.

The defendant identified himself as Kaseem Matts, but denied that the drugs and the identification found under the dresser belonged to him. Several days later, his true identity was disclosed.

The apartment at 191 Pine Street was described as a "drug house," where three prior search and seizure warrants had been executed; the defendant conceded that the apartment is a drug house. Sergeant Brian Norwood, who was qualified as an expert in the field of narcotics investigations and, specifically, the customary practice of narcotics dealers, testified that under a hypothetical scenario in which a person is in a barri-

caded premises with 100 packets of cocaine, a walkie-talkie and $300 on his person, sale rather than personal use is more likely indicated. He also gave his opinion as to the ways in which crack cocaine could be packaged for street level sales.

I

The defendant first claims that the evidence presented by the state was insufficient as a matter of law to sustain his conviction for criminal impersonation pursuant to § 53a-130 (a).[2] The state concedes, and we agree, that the statute prohibits impersonating "another" and does not prohibit merely giving a false name. *State* v. *Jackson*, 32 Conn. App. 724, 728, 630 A.2d 164, cert. denied, 228 Conn. 903, 634 A.2d 297 (1993). Because the state failed to prove at trial that the defendant intended to impersonate or actually did impersonate a real person named Kaseem Matts, the evidence was insufficient to sustain his conviction under § 53a-130 (a). See *State* v. *Smith*, 194 Conn. 213, 220–22, 479 A.2d 814 (1984). We therefore reverse the judgment of conviction of criminal impersonation and direct the trial court on remand to render a judgment of acquittal on that count.

II

The defendant next argues that his conviction on counts one, two and three must be set aside because

---

[2] General Statutes (Rev. to 1997) § 53a-130, as amended by Public Acts 1997, No. 97-123, § 3, provides: "A person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another; or (2) pretends to be a representative of some person or organization and does an act in such pretended capacity with intent to obtain a benefit or to injure or defraud another; or (3) pretends to be a public servant other than a sworn member of an organized local police department or the Division of State Police within the Department of Public Safety, or wears or displays without authority any uniform, badge or shield by which such public servant is lawfully distinguished, with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense."

the state failed to prove that he was in constructive possession of the cocaine at the time of his arrest. We disagree.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. . . . In doing so, we keep in mind that [w]e have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . .

"Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [t]his court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Sanchez*, 50 Conn. App. 145, 149–51, 718 A.2d 52, cert.

denied, 247 Conn. 922, 722 A.2d 811 (1998). On the basis of our review of the evidence, we conclude that the evidence was sufficient to establish that the defendant had constructive possession of the narcotics.

"[T]o prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence and exercised dominion and control over it. . . . Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) State v. Thompson, 46 Conn. App. 791, 797–98, 700 A.2d 1198 (1997).

The defendant's words and actions when Ferraro approached the window, together with the facts that he was alone in the vacant apartment, had in his pocket the key to the only functional door and that there were packaged narcotics in plain view consistent with street level sales, are sufficient cumulative facts, involving substantial circumstantial evidence, to permit the jury reasonably to find constructive possession on the part of the defendant.[3] The cumulative effect of this and other evidence, along with the reasonable inferences that the jury could draw from that evidence, could reasonably have allowed the jury to find that the defendant had knowledge and control over the narcotics, and therefore "possessed" the narcotics seized moments

[3] Counts one, two and three, which alleged violations of §§ 21-278 (b), 21a-277 (a) and 21a-278a (b), respectively, all require proof of possession.

after the defendant was prepared to make a sale of crack cocaine. The jury may use its common sense in assessing the circumstantial evidence to resolve an issue. See *State* v. *Williams*, 231 Conn. 235, 252, 645 A.2d 999 (1994); *State* v. *Crump*, 43 Conn. App. 252, 259–61, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996).

## III

The defendant states that his conviction under § 21a-278 (b)[4] "must be set aside because there was ample evidence that the defendant was drug-dependent at the time of his arrest." The defendant concedes that his claim was not properly preserved at trial but seeks *Golding*[5] review on the basis that this claim is actually a sufficiency of the evidence claim that necessarily meets the four prongs of *Golding*. See *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993). We do not agree that the defendant's claim involves one of sufficiency of the evidence.

To obtain a conviction under § 21a-278 (b), the state must prove that the defendant possessed narcotics with the intent to sell them. "[T]he absence of drug depen-

---

[4] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[5] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

dency is not an element of the offense . . . . Rather, [proof of drug dependency provides] an exemption from liability" that must be proved by the defendant. *State v. Hart*, 221 Conn. 595, 608, 605 A.2d 1366 (1992).[6] "[A] person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent at the time of the offense." *State v. Jenkins*, 41 Conn. App. 604, 609, 679 A.2d 3 (1996).

Whether the defendant met his burden is for the jury to determine. "It is without question that the jury is the ultimate arbiter of fact and credibility. *State v. Dyson*, 217 Conn. 498, 506, 586 A.2d 610 (1991). As such, it may believe or disbelieve all or any portion of the testimony offered." *State v. Hart*, supra, 221 Conn. 604.

"A trier of fact is free to reject testimony even if it is uncontradicted . . . and is equally free to reject part of the testimony of a witness even if other parts have been found credible." (Citations omitted.) *Barilla v. Blake*, 190 Conn. 631, 639, 461 A.2d 1375 (1983). It is axiomatic, however, that, in rejecting such testimony, a fact finder is not free to conclude that the opposite is true. E.g., *State v. Hart*, supra, 221 Conn. 605; *Novak v. Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979).

While the defendant may have introduced sufficient evidence of his drug dependency to warrant a jury instruction, that does not mean that the jury had to

---

[6] We note that the state must prove "beyond a reasonable doubt . . . all the elements of the crime and the defendant's participation or responsibility, but *not* . . . each evidentiary fact. . . . It is only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State v. Rodgers*, 198 Conn. 53, 58 n.1, 502 A.2d 360 (1985); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.4.2, p. 75.

accept that evidence as credible. The defendant's unpreserved claim is not reviewable.

## IV

The state concedes, and we agree, that the defendant's claim is correct that his double jeopardy rights were violated by his conviction and sentencing under both § 21a-278 (b) and § 21a-277 (a). The state also concedes that this claim, although unpreserved, qualifies for review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant properly seeks to have his sentence under § 21a-277 (a) vacated and that conviction merged with the conviction under § 21a-278 (b). Because § 21a-277 (a) is a lesser included offense of § 21a-278 (b), and the two convictions arose out of the same act or transaction and are substantially identical, multiple punishments are improper. See *State* v. *Chicano*, 216 Conn. 699, 714, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). We therefore direct on remand that the defendant's conviction on counts one and two be combined, and that his sentence under § 21a-277 (a) be vacated.

## V

The defendant next alleges that the court improperly admitted expert testimony by a police officer that went to the ultimate issue of the defendant's intent, thereby usurping the jury's function as trier of fact. Because this claim was not preserved at trial, the defendant seeks review under the plain error doctrine pursuant to Practice Book § 60-5. We find no merit to this claim.

A challenge to a court's ruling admitting expert testimony is evidentiary in nature; *State* v. *Vilalastra*, 207 Conn. 35, 45, 540 A.2d 42 (1988); and our Supreme Court has declined to attach constitutional significance to the erroneous admission of expert testimony concerning

an ultimate fact. *State* v. *Campbell*, 225 Conn. 650, 657, 626 A.2d 287 (1993); see also *State* v. *Cardany*, 35 Conn. App. 728, 740, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994).

"Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Caprilozzi*, 45 Conn. App. 455, 462, 696 A.2d 380, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997).

All questions asked of the police officer were hypothetical questions and general in nature, and they elicited his opinion regarding a pattern of conduct typical of the sale of narcotics or consistent with an intent to sell narcotics. We decline to afford this claim plain error review.

## VI

The defendant finally claims that the court improperly failed to instruct the jury that he could be found not guilty of violating § 21a-278 (b) if he was drug-dependent at the time of his arrest. Specifically, the defendant argues that the court could and should have made the instruction clearer by charging that he should

be found "not guilty" of violating § 21a-278 (b) if he sustained his burden of proving drug dependency by a preponderance of the evidence. The defendant further claims that the court gave an improper instruction when it charged that the state had the burden to prove that he was not drug-dependent.[7] In response, the state argues that the "only reasonable application of the court's instruction is that the jury was duty bound to acquit if the defendant met his burden." We agree with the state.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . [this court] will not view the instructions as improper. . . . *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995)." (Internal quotation marks

---

[7] Although the defendant submitted a written request to charge on drug dependency, he failed to object to the court's instruction at the conclusion of the charge and noted that there were no exceptions after the court's subsequent charge to the jury. The defendant claims that he properly preserved the claim for appeal and that in any event, "failure to take exception to the charge would not preclude review under the plain error doctrine." *Suggs* v. *Suggs*, 209 Conn. 733, 751–52, 553 A.2d 1110 (1989). "To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice . . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Lindstrom*, 46 Conn. App. 810, 817, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997).

omitted.) *State* v. *Delgado*, 247 Conn. 616, 625, 725 A.2d 306 (1999).

The following instruction, in relevant part, was given by the court with regard to drug dependency: "Now, the defendant is charged in the information, first count, with a violation of § 21a-278 (b), which insofar as it pertains to this case reads as follows: Any person who possesses with the intent to sell or dispense any narcotic substance and who is not at the time of such action drug-dependent, shall be punished. . . . Now, the absence of drug dependency is not an element in the state's case, that's why I said in these two statutes the elements are the same. One of our statutes, § 21a-269, has the effect of placing the burden on the defendant to produce some evidence that he was a drug-dependent person at the time of the alleged offense. You recall the defendant and the young lady who testified for him both testified as to the copious quantities of liquor and drugs that the defendant took all the time. It's also true that because most persons are not drug-dependent or most are not drug addicts, the law presumes that the defendant was not drug-dependent at the time of the incident on which the charge is based. The state, therefore, has the right in the first instance to rely on the presumption that the defendant was not drug-dependent at the time of the offense alleged in the information and the defendant bears the burden of persuading the jury by a preponderance of the evidence that he is drug-dependent . . . . The mere fact that a person had taken a narcotic drug does not make that person drug-dependent. To be a drug-dependent person, the defendant must show that at the time and date alleged he had developed a state of psychic or physical dependence, or both upon a controlled substance, such as cocaine, following administration of that substance upon a repeated, periodic or continuous basis. Now, the burden that the defendant has to do that is the so-called civil

burden, a preponderance of the evidence, the known legal definition of preponderance of the evidence might be, more likely than not. If you envision the scales of justice being held by the blindfolded, a preponderance of the evidence would be that amount of evidence necessary to tilt it ever so slightly in the favor of the—In this case, saying that he's drug-dependent. If you believe that the defendant has shown by a preponderance of the evidence that at the time of this incident he was drug-dependent, then you have to consider something else, when the defendant produces such evidence. The presumption of nondrug dependency loses all operative effect and the state then bears the burden of proving beyond a reasonable doubt that the defendant was non-drug-dependent at the time of the offense. So, assuming in argument you get this far in your determination, which would mean assuming in argument you found that one, the defendant was in possession of cocaine, and at the time that he was in possession of cocaine, he possessed it with the intent to supply it to somebody else. He's possessing with intent to sell. The next step is, you have to determine whether at that time when he was in that condition did he show by a preponderance of the evidence that he was a drug-dependent person. If you find that he did, then the state has got to prove beyond a reasonable doubt that he was not drug-dependent. Now, the second count is like the first except whole admission of drug dependence is not involved."

Our review of the defendant's claims requires that we examine the court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the instructions. *State* v. *Ortiz*, 217 Conn. 648, 661–62, 588 A.2d 127 (1991). "While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request." Id., 662. "[A] charge to the

jury is not to be clinically dissected nor are portions of the charge to be read in isolation from the entire instruction." (Internal quotation marks omitted.) *State* v. *Fernandez*, 27 Conn. App. 73, 87, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992). "If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . Whether a charge is possibly misleading depends on the substance rather than the form of what is said." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, supra, 662.

In the present case, the court was under no obligation to give the specific charge proposed by the defendant where it gave the requested charge in substance. See id. Here the court stated the elements of § 21a-278 (b). It is clear from the court's statement of the elements of the crime that the defendant could not be punished for violating § 21a-278 (b) if he was drug-dependent at the time of the offense. The court further explained that the defendant had the burden of persuading the jury by a preponderance of the evidence that he was drug-dependent at the time of the offense. Thus, our review of the charge leads us to conclude that the court gave a proper instruction relating the significance of a finding of drug dependency on the part of the defendant at the time of the offense, as well as the defendant's burden of proving drug dependency. The court misstated the law, however, regarding the burden of proof placed on the state to disprove drug dependency "beyond a reasonable doubt."[8] Nevertheless, the court's instruction, as a whole, substantially constitutes a legally and logically correct statement of the law, and

[8] The state argues that the charge was "overly favorable to the defendant because it increased the state's burden of proof when it erroneously placed the burden on the state to disprove [drug] dependency beyond a reasonable doubt."

we conclude that there is no reasonable possibility that it misled the jury. The charge was given substantially as requested and, although not perfect, the instruction overall was sufficient to guide the jury to a correct verdict.

The judgment is reversed in part and the case is remanded with direction to render judgment of not guilty on the charge of criminal impersonation, to combine the defendant's convictions on counts one and two, and to vacate the sentence imposed for violating § 21a-277 (a); the judgment is affirmed in all other respects.

In this opinion the other judges concurred.