STATE OF CONNECTICUT *v.* JOSE PRAT
(AC 19492)

Spear, Mihalakos and Shea, Js.

Argued December 7, 2000—officially released October 9, 2001

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph Corradino*, assistant state's attorney, for the appellee (state).

*Opinion*

SHEA, J. After a jury trial and a verdict of guilty on both counts of the information, the defendant, Jose Prat, has appealed from the judgment convicting him of assault in the first degree in violation of General

Statutes § 53a-59 (a) (1),[1] as charged in the first count of the information, and carrying a dangerous instrument in violation of General Statutes (Rev. to 1997) § 53-206 (a),[2] as charged in the second count. The trial court sentenced the defendant to a term of imprisonment of twenty years on the charge of assault in the first degree, execution suspended after fifteen years and five years probation, and to a term of imprisonment of three years on the second count of carrying a dangerous instrument. The court ordered that the sentence of three years on the second count run concurrently with the fifteen year sentence on the first count, resulting in a total effective sentence for both offenses of twenty years, execution suspended after fifteen years and five years probation. On appeal, the defendant claims that (1) the court improperly instructed the jury regarding the charge of assault in the first degree and thereby violated his due process rights, (2) the court improperly permitted the state to amend the information to allege a violation of § 53-206 (a) and (3) the evidence was insufficient to support his conviction of the crime of carrying a

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes (Rev. to 1997) § 53-206 (a) provides in relevant part: "Any person who carries upon his person any slung shot, air rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, or any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument, unless such person has been granted a written permit . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . . The issuing authority may request the applicant's fingerprints and full information concerning his criminal record and make an investigation concerning the suitability of the applicant to carry any such weapon. . . ."

dangerous instrument in violation of § 53-206 (a). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 11 p.m. on January 3, 1997, the victim, Michael Barnum, was walking on Barnum Avenue in Stratford. Four young men, including the defendant, Anthony Ramirez, Tremaine Irby and Peter Cortijo, were standing in a driveway adjacent to Barnum Avenue. One of the men observed the victim walking and called him over. Being familiar with two of the men standing in the driveway, Cortijo and Ramirez, the victim entered the driveway. The defendant proceeded to strike the victim in the head with a baseball bat. The victim lost consciousness and remained in a hospital for four days.

Two officers of the Stratford police department, Frederick Wilcoxson and Robert Joy, had parked their unmarked police car on Barnum Avenue at about 11 p.m. on that evening. Wilcoxson observed four young men walking on Barnum Avenue and subsequently enter a driveway on that street. He then noticed the victim walking on Barnum Avenue and saw that one of the men standing in the driveway had called the victim over. The victim was standing in the driveway with the four men when Wilcoxson observed that two of the young men raised their arms displaying baseball bats. Joy also witnessed the defendant strike the victim with a baseball bat. Wilcoxson saw only one of the youths, the defendant, strike the victim on the head with a bat and then strike him two more times while the victim was lying on the ground. Wilcoxson and Joy ran from their parked vehicle across the street to the driveway, but before they arrived, the four men fled from the driveway. Wilcoxson retrieved one baseball bat from the driveway and two others at the end of the driveway in the area to which the four youths had run.

At trial, the defendant called as a witness Louis Buso, a man who lived in the house at the end of the driveway that was the scene of the attack. Buso testified that on the night of the assault, he had heard some people yelling in his driveway and that he had observed about five persons kicking a young man and hitting him with their fists and baseball bats. He could not identify any of the youths involved in the assault.

The defendant filed two motions for a judgment of acquittal on the ground of insufficient evidence to support a finding of guilty, which the trial court denied. After the final arguments of counsel, the court, in its charge to the jury, instructed the jurors that, with respect to the first count of the amended information, which charged the defendant with assault in the first degree, the defendant could be found guilty if the jury concluded that the three elements of § 53a-59 (a) (1) had been established beyond a reasonable doubt: (1) the defendant intended to cause serious physical injury to another person; (2) he in fact caused serious physical injury to that person; and (3) he caused that injury by means of a dangerous instrument. The court also instructed the jurors that they could find the defendant guilty of assault in the first degree if they found that the defendant was an accessory to the assault on the victim. The court read the applicable portion of the accessory statute, General Statutes § 53a-8 (a), stating: "A person, acting with the mental state required for the commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." The court also explained that "[e]veryone is a party to a crime who actually commits it or does some act forming part of it, or who assists in its actual commission or the commission of any part of it."

The jury returned a verdict of guilty of assault in the first degree as an accessory on the first count of the information and guilty on the second count, which charged the defendant with carrying on his person a dangerous instrument, namely, a baseball bat, without a written permit. This appeal followed.

I

On appeal, the defendant first contends that the court violated his due process rights by instructing the jury that it could convict him of assault in the first degree as an accessory when he had been charged as a principal offender in the original and amended informations.

"Under Connecticut law, a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct." *State* v. *Fleming*, 198 Conn 255, 268 n.15, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986). "[T]he propriety of a charge on 'aiding and abetting' is predicated on the basis of the sufficiency of the evidence heard during the course of the trial, not on the mention of such charges in pretrial documents." *State* v. *Ferrara*, 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979).

The defendant relies on the decision of this court in *State* v. *Steve*, 11 Conn. App. 699, 529 A.2d 229 (1987), aff'd, 208 Conn. 38, 544 A.2d 1179 (1988). In that case, the defendant was charged as a principal with the crimes of robbery in the first degree and assault in the first degree. Before trial, he filed a motion for a bill of particulars stating the specific nature of the offense or offenses charged, the time, place and manner in which the offenses were committed, the specific acts performed by the defendant which constituted all necessary elements of the crimes charged, and the names and addresses of all persons the state alleged were

involved. Id., 701. The response of the state indicated that the defendant was the only person who had participated in committing the crimes charged. At the trial, there was evidence that the defendant was an accomplice of another man who actually had shot the victim in the course of a robbery. This court concluded that the defendant had been unfairly prejudiced in defending himself "[i]n light of the state's particularization of the offenses, both in its bill of particulars and in its representation up until the close of the evidence"; id., 706–707; and that the defendant "was justified in believing that the state was not proceeding upon the theory of accessory liability and in relying upon the prior expressed particularization of the two charges." Id., 707.

The present case is distinguishable from *Steve*. The defendant in this case never filed a motion for a bill of particulars, nor did he claim that he was otherwise misled by the state concerning accessory liability. It was the defendant himself who called the witness who testified that from his residence at the end of the driveway, he had observed about five persons, none of whom he could identify, kicking the victim and hitting him with their fists and baseball bats. The state never presented any evidence that anyone other than the defendant had participated in the assault. The only evidence supporting the charge on accessorial liability was provided by the defendant. The defendant could not have been surprised by the evidence on accessorial liability as he presented it at trial.

The trial judge, before final arguments, informed both counsel during a conference in chambers that he intended to charge on accessorial liability. The defendant had the same opportunity as the state to prepare his final arguments to the jury on the subject of his liability as an accessory. "Thus, unlike the situation in *Steve*, the defendant here was specifically put on notice by the trial court, prior to [final arguments], that the

issue of accessorial liability was . . . in the case." *State v. Williams*, 220 Conn. 385, 390, 599 A.2d 1053 (1991). We conclude that the charge on accessorial liability was appropriate and affirm the judgment of the trial court on the first count of the information.

## II

In challenging the verdict on the second count of the amended information, which charged the defendant with carrying "upon his person a dangerous instrument, to wit: a baseball bat, without a written permit in violation of [§] 53-206 (a) of the Connecticut General Statutes," the defendant raises two issues: (1) whether the court improperly permitted the state to amend the information to allege a violation of § 53-206 (a) from carrying a dangerous weapon to carrying a dangerous instrument and (2) whether the evidence was sufficient to convict the defendant of the crime of carrying a dangerous instrument in violation of § 53-206 (a).

## A

Practice Book § 36-18 provides in relevant part: "After the commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ." "The sole limiting requirement under [Practice Book] § 624 [now § 36-18], is that no additional or different offense may be charged in an amendment, and no substantive rights of the defendant may be prejudiced by an amendment." *State v. Morris*, 49 Conn. App. 409, 415–16, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998). "Practice Book § 624 [now § 36-18] is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. . . . It is the defendant's burden to provide a specific

showing of prejudice resulting from the state's delay in providing notice of the charge against which [he] must defend." (Citation omitted; internal quotation marks omitted.) Id., 415. It is within the trial court's discretion to allow an amendment to the information. On appeal, review of the trial court's decision to permit an amendment to the information is one of abuse of discretion. Id., 416.

In this case, the state sought to amend the information to charge the defendant with carrying a dangerous instrument, rather than a dangerous weapon. Pursuant to § 53a-59 (a), "[a] person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." A close reading of the statute reveals that it treats a deadly weapon and a dangerous instrument as equivalent alternatives.

Section 53-206 (a) prohibits carrying on one's person fourteen specifically named weapons "or any other dangerous or deadly weapon or instrument" without a written permit signed by an authorized town official. General Statutes § 53a-3 (7) defines a dangerous instrument as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (6) defines a deadly weapon to mean "any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. The definition of 'deadly weapon' in this subdivision shall be deemed not to apply to section 29-38 or 53-206."

Because the baseball bat used by the defendant to strike the victim in this case would not ordinarily be viewed as a "dangerous weapon," we conclude that

the trial court properly allowed the amendment to the information that substituted "dangerous instrument" for "dangerous weapon." In the circumstances of this case, the amendment removed a possible source of jury confusion. Further, the defendant fails to explain how he was unfairly prejudiced by the amendment to the information. Accordingly, this claim is without merit.

### B

The defendant's additional claim that there was insufficient evidence to convict him of carrying a dangerous instrument in violation of § 53-206 (a) is similarly without merit.[3] Specifically, the defendant contends that because of the absence of evidence at trial that he did not possess a permit for the "dangerous instrument," namely, the baseball bat that he had used to strike the victim, he could not have been convicted for violating § 53-206 (a).

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 331, 662 A.2d 1199 (1995). In the present case, the jury reasonably could have concluded beyond a reasonable doubt that the defendant lacked a permit to carry a dangerous instrument.

---

[3] On appeal, the defendant has briefed his claim of insufficient evidence only with respect to the second count of the information charging him with carrying a dangerous instrument without a written permit. No such claim has been briefed claiming insufficiency of the evidence to support the finding of guilty on the first count of assault in the first degree.

Undoubtedly, the lack of a permit is an essential element of the crime, which the state has the burden of proving. At trial, Officer Wilcoxson testified on cross-examination by the defendant that he was acquainted with the weapons permit records of the town of Stratford and that he had examined those records before coming to court on that day. He testified that no person had ever been issued a permit to carry a baseball bat in the town of Stratford and that the defendant had never received such a permit from the town.

On the basis of the foregoing, we conclude that the defendant's claim of the lack of sufficient evidence before the jury regarding whether he possessed a permit to carry a dangerous instrument is without merit.

### III

During the oral argument of this case, this court expressed some concern over the defendant's conviction of both assault in the first degree in violation of § 53a-59 (a) (1) and carrying a dangerous instrument in violation of § 53-206 (a) because the same act, i.e., striking the victim with a baseball bat, formed the basis for his conviction of both crimes and implicated double jeopardy principles. On December 12, 2000, this court ordered that the parties submit supplemental briefs on the following issue: "Was the defendant properly convicted of both assault in the first degree by causing serious physical injury with a dangerous instrument and carrying a dangerous instrument where the instrument was a baseball bat that became a dangerous instrument only because it was used in the assault?" Both parties have submitted additional briefs as ordered.[4]

---

[4] We note that pursuant to Practice Book § 60-5, this "court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." In accordance with *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98, 644 A.2d 325 (1994), "our sua sponte invocation of plain error review is warranted when the following requirements are satisfied: (1) we discuss the rule and articulate why it is appropriate; and (2) we give the parties an opportunity to brief the issue." *State* v. *Washington*, 39 Conn. App.

The fifth amendment to the constitution of the United States provides in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." That provision is known as the double jeopardy clause. In *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), the United States Supreme Court construed the clause to provide three separate guarantees: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." In this case, we are concerned with only the last of these protections.

A baseball bat is not a dangerous instrument simply because it is being carried by a person in a public place without a permit. The testimony at trial indicates that no permit to carry a baseball bat has ever been issued by the town of Stratford. Of the four youths who had baseball bats in their possession at the time of the crime, the defendant was the only one who was arrested and charged with carrying a dangerous instrument in violation of § 53-206 (a). The definition of a dangerous instrument pursuant to § 53a-3 (7) "means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." The defendant's bat became a dangerous instrument only because he used it to inflict a serious injury on the victim, thus satisfying the requirement of

175, 179, 664 A.2d 1153 (1995). "To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Bradley,* 60 Conn. App. 534, 546, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000).

§ 53a-59 (a) of causing serious physical injury to another person by means of a dangerous instrument and supporting his conviction of assault in the first degree and the sentence of twenty years imposed for that act. The court properly directed that the sentence of three years, which was imposed for carrying a dangerous instrument, should run concurrently with the sentence on the conviction of assault in the first degree.

Nevertheless, it cannot be denied that the same act, that is, striking the victim with a baseball bat, is the sole basis for both crimes and that the separate sentence for carrying a dangerous instrument in violation of § 53-206 (a) raises the concern of double punishment for the same offense as prohibited by the fifth amendment to our federal constitution. Although the double jeopardy issue is academic insofar as the defendant's term of imprisonment is concerned, the defendant's having one less conviction for a crime on his record may possibly benefit him at some time in the future.

The United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), established the criteria for determining whether multiple charges constitute the same offense for double jeopardy purposes. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304. "In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars . . . . The issue, though essentially constitutional, becomes one of statutory construction." (Citations omitted; internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 8–9, 629 A.2d 386 (1993).

Confining the double jeopardy inquiry to the "relevant statutes, the information, and the bill of particulars"; id.,

8; we are constrained to conclude that the defendant's conviction of both assault in the first degree in violation of § 53a-59 (a) (1) and carrying a dangerous instrument in violation of § 53-206 (a) does not constitute "multiple punishments for the same offense" in violation of the double jeopardy clause of the fifth amendment to our federal constitution. Each statute requires proof of an element to support a conviction that is not found in the other. Assault in the first degree; General Statutes § 53a-59 (a) (1); requires that an offender intend to cause serious physical injury to another person and that he actually "[cause] such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ." No such requirement of an intent to cause physical injury or causing such injury is contained in § 53-206 (a), which prohibits the carrying of a dangerous or deadly weapon or instrument on one's person without a permit. That statute specifically designates approximately twenty items as falling into that category and alternately proscribes "any other dangerous or deadly weapon or instrument, unless such person has been granted a written permit . . . ." Section 53-206 (a) requires for a violation only that a person carry a dangerous or deadly weapon or instrument on his person without a permit. As noted in part II B of this opinion, the lack of a permit is an essential element of the crime. It does not require the additional elements of an intent to cause serious physical injury to another person and causing such injury to that person, which are required by § 53a-59 (a) (1) for a conviction of assault in the first degree.

The interaction between § 53a-59 (a), assault in the first degree, and § 53-206 (a), carrying a dangerous instrument, is created by § 53a-3 (7). The definition of a dangerous instrument as "any instrument . . . which, under the circumstances in which it is used or

attempted or threatened to be used, is capable of causing death or serious injury," forms the basis for treating as a dangerous instrument the baseball bat that was used by the defendant to strike the victim and to cause him to suffer a serious physical injury. Such interaction, however, does not make assault in the first degree the same offense as carrying a dangerous instrument on one's person because each of those offenses requires proof of facts that are unnecessary to prove a violation of the other.

The judgment is affirmed.

In this opinion the other judges concurred.